**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 97-20574

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

MARIO FLORES-DIAZ; GILBERTO ROBLEDO-ROBLEDO,

Defendants - Appellants.

Appeals from the United States District Court
for the Southern District of Texas
(H-96-CR-227-2)

March 11, 1999

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:[1]

Gilberto Robledo-Robledo and Mario Flores-Diaz were convicted of conspiracy to possess with intent to distribute cocaine and aiding and abetting possession with intent to distribute cocaine. Both challenge the sufficiency of the evidence to support their convictions. In addition, Robledo-Robledo challenges two admissibility rulings by the district court, and challenges the district court's refusal to reduce his offense level as a minimal or minor participant. We affirm.

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

BACKGROUND

Robert Navarro contacted Norberto Castillo, a confidential informant ("CI") for the DEA, to help him locate a buyer for fifteen kilograms of cocaine. Navarro, the CI, Robledo-Robledo, Flores-Diaz and others participated in the sale of 18.4 kilograms of cocaine to undercover officers. The CI identified Juan Rodriguez as the boss of the sale side of the deal.

DISCUSSION

Robledo-Robledo

Robledo-Robledo contends that the evidence was insufficient to sustain the guilty verdicts against him; that the court abused its discretion by refusing to admit into evidence examples of Robledo-Robledo's handwriting and by admitting into evidence the CI's testimony concerning Robledo-Robledo's involvement in the drug transaction. Finally, Robledo-Robledo contends that the district court abused its discretion by refusing to reduce his offense level under U.S.S.G. § 3B1.2 as a minimal or minor participant.

1. Sufficiency of the Evidence

Robledo-Robledo moved for acquittal at the end of the government's evidence; the district court denied the motion. Robledo-Robledo failed to renew the motion at the close of all evidence. Therefore, we review his sufficiency of the evidence claims for a manifest miscarriage of justice. See United States v. Thomas, 12 F.3d 1350, 1358 (5th Cir. 1994). "Such a miscarriage would exist only if the record is devoid of evidence pointing to

guilt, or . . . [if] the evidence on a key element of the offense was so tenuous that a conviction would be shocking." Id. (citing United States v. Galvan, 949 F.2d 777, 782 (5th Cir. 1991)). We must view all evidence and any inferences therefrom in the light most favorable to the government. See id. "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir. 1995) (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), aff'd on other grounds, 462 U.S. 356, (1983)). In addition, "[i]t is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate the credibility of witnesses." United States v. Ivey, 949 F.2d 759, 767 (5th Cir. 1991).

For conspiracy to possess with intent to distribute, the government must prove: (1) existence of an agreement to possess with the intent to distribute; (2) knowledge of the agreement; and (3) voluntary participation in the agreement. See United States v. Gonzales, 121 F.3d 928, 935 (5th Cir. 1997). For aiding and abetting, the government must prove that the underlying offense occurred,[2] and the defendant: "(1) associated with a criminal venture, (2) participated in the venture, and (3) sought by action to make the venture successful." United States v. Lombardi, 138 F.3d 559, 561 (5th Cir. 1998). The defendant must "share in the

[2]Nobody contests that the government proved that the underlying offense of possession with intent to distribute occurred.

3

intent to commit the offense" and "play an active role in its commission." Id.

The evidence is sufficient to support Robledo-Robledo's convictions. Robledo-Robledo arrived at Taqueria Arandas, the prearranged location for the drug transaction, and informed Navarro and the CI that the new location would be at the Fiesta. Navarro asked Robledo-Robledo where he was going to put "it." Robledo-Robledo responded "under the cushions." When Robledo-Robledo drove the van away from the restaurant, the hidden compartment in the van was empty.[3] Robledo-Robledo stopped at two houses, one on Longview and one on Westmont Drive, before delivering the van to the Fiesta. Police later searched the Longview house, uncovering a kilo of cocaine wrapped in the exact same manner as the cocaine recovered from the van Robledo-Robledo was driving. Juan Rodriguez, whom the CI identified as the boss of the sale side of the transaction, lived at the Westmont house. While waiting at the Fiesta for Robledo-Robledo and the van to arrive, Flores-Diaz called the Longview house on the CI's cell phone; both he and Navarro spoke. Afterwards, Navarro said "it" was ready, the driver had "it," and he was close by. Soon after, Robledo-Robledo arrived at the Fiesta with the van, gave the keys to the CI, and said "they" were inside the box of toys. The CI checked under the cushions in the van, and

___

[3]The evidence establishes that the van's hidden compartment contained no cocaine when Navarro left the Clarion Hotel. Surveillance, which followed Navarro to the Exxon Station and then to Taqueria Arandas, detected no cocaine placed in the van at either location. When Robledo-Robledo rejoined the coconspirators at the Fiesta, 20 kilograms of cocaine was in the hidden compartment.

found a toy box loaded with approximately 20 kilograms of cocaine. Finally, when Robledo-Robledo was arrested, he had a business card with Rodriguez's phone number on it.

Although Robledo-Robledo offers an explanation for his conduct other than involvement in the drug transaction,[4] the jury rejected that explanation. Viewing the evidence and the inferences therefrom in the light most favorable to the government, Robledo-Robledo's convictions for conspiracy to possess with intent to distribute and aiding and abetting are not a manifest miscarriage of justice. Therefore, we affirm.

2. Admissibility of Evidence

Robledo-Robledo challenges two of the district court's admissibility rulings. We review a district court's evidentiary rulings for an abuse of discretion. See United States v. Haese, 162 F.3d 359, 364 (5th Cir. 1998). If we find that the district court abused its discretion, we review the error under the harmless error doctrine. See id. We affirm the ruling unless it affects a substantial right of the complaining party. See id. An error affects "a criminal defendant's substantial rights if it had

---

[4]Robledo-Robledo contends as follows. He met with Navarro to arrange using Navarro's van for Robledo-Robledo's painting business. Robledo-Robledo picked up the van from Navarro at the Taqueria Arandas to take it to be inspected for mechanical problems. He went to the Longview and Westmont because Navarro had told him he would find mechanics to inspect the van at those addresses. When Robledo-Robledo said that he would put "it" under the cushions and that "they" were in the toy box, he was talking about mechanical devices to check pressure. He did not know cocaine was in the van.

substantial and injurious effect or influence in determining the jury's verdict." United States v. Hall, 152 F.3d 381, 402 (5th Cir. 1998) (internal quotes omitted).  The complaining party has the burden of proving that the ruling affects a substantial right. See McDonald v. Steward, 132 F.3d 225, 232 (5th Cir. 1998).

First, Robledo-Robledo contends that the district court improperly excluded his handwriting sample.  A business card with Rodriguez's phone number handwritten on the back was among Robledo-Robledo's possessions when arrested.  The government offered this card as evidence of a connection between Robledo-Robledo and the drug transaction.  Robledo-Robledo, while under redirect examination, wrote out the phone number ten times in his own handwriting.  His counsel attempted to admit Robledo-Robledo's writing sample in evidence.  The government objected because they had not received notice of Robledo-Robledo's intent to introduce the exhibit prior to the evidence being offered.  The district court sustained the government's objection based on Robledo-Robledo's failure to comply with reciprocal discovery.[5]

Robledo-Robledo contends that the exclusion harmed him because his handwriting sample would have helped the jury discern whether

---

[5]The parties cite to discovery cases in outlining the standard of review.  We need not resolve whether the discovery standard or evidence admissibility standard applies, since the proper standard in both cases is abuse of discretion.  Compare United States v. Deisch, 20 F.3d 139, 154 (5th Cir. 1994) (stating that abuse of discretion is the standard of review for discovery rulings, and noting that the complaining party must prove prejudice to his substantial rights) with McDonald v. Steward, 132 F.3d 225, 232 (5th Cir. 1998). (stating that abuse of discretion is the standard of review for admissibility rulings, and noting that the complaining party must prove prejudice to his substantial rights).

he testified truthfully that he did not write Rodriguez's number on the back of the business card. We need not decide whether the district court abused its discretion. Even assuming such abuse, Robledo-Robledo did not prove that the exclusion affected a substantial right. Although Robledo-Robledo's possession of the card may have influenced the jury's verdict, whether or not Robledo-Robledo wrote Rodriguez number was irrelevant. The government never contended that Robledo-Robledo wrote the number; it simply urged that Robledo-Robledo's possession of a business card with the boss's number on it connected Robledo-Robledo to the drug transaction. Because Robledo-Robledo did not prove substantial adverse affects from exclusion of the handwriting sample, we affirm.

Second, Robledo-Robledo contends that the district court improperly admitted testimony by the CI. The government asked the CI if he thought Flores and Robledo were involved in the drug transaction. Defense counsel objected, stating that the question invaded the province of the jury. The district court overruled the objection. The government rephrased the question, asking the CI if, based on his observations and conversations with Flores and Robledo, he thought they were involved in the drug transaction. The CI answered "yes."

Under Federal Rule of Evidence 704, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704. The CI's opinion based on observations

and conversations did not tell the jury what verdict it should reach or state legal conclusions.  See Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983).  Because the district court did not abuse its discretion in admitting the testimony, we affirm.

3.  Reduction in Offense Level

Robledo-Robledo contends that the district court should have reduced his offense level based on the role he played in the criminal venture.  We uphold a sentence under the Sentencing Guidelines that correctly applies the Guidelines to factual findings that are not clearly erroneous.  See United States v. Zuniga, 18 F.3d 1254, 1261 (5th Cir. 1994).  We review legal determinations de novo, and factual findings for clear error.  See id.  A factual finding is not clearly erroneous if it is plausible in light of the record as a whole.  See id.  The determination of the defendant's role in an offense is a factual finding subject to clearly erroneous review.  See id.

Section 3B1.2(a) of the Sentencing Guidelines permits a four level decrease in the offense level if the defendant was a "minimal participant."  1997 U.S.S.G. § 3B1.2(a).  This downward adjustment "will be used infrequently," mainly when the defendant "lack[s] knowledge or understanding of the scope and structure of the enterprise and of the activities of others . . . ."  1997 U.S.S.G. § 3B1.2 commentary n.1, n.2.  Section 3B1.2(b) of the Sentencing Guidelines permits a two level decrease in the offense level if the defendant was a "minor participant."  1997 U.S.S.G. § 3B1.2(a).  A minor participant is someone "who is less culpable than most

**8**

other participants, but whose role could not be described as minimal." 1997 U.S.S.G. § 3B1.2 commentary n.3. The evidence of Robledo-Robledo's involvement in the transaction supports the district court's finding that Robledo-Robledo was neither a minimal nor minor participant. We affirm.

Flores-Diaz

Flores-Diaz contends that the evidence was insufficient to sustain the guilty verdicts against him for conspiracy with intent to distribute cocaine and aiding and abetting possession with intent to distribute cocaine. Flores-Diaz moved for acquittal at the end of the government's evidence; the district court denied the motion. Flores-Diaz again moved for acquittal at the close of all of the evidence; the district court again denied the motion. Flores-Diaz appeals this denial.

Since Flores-Diaz renewed his motion for acquittal, we review his challenge to the sufficiency of the evidence to "determine whether a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." United States v. Millsaps, 157 F.3d 989, 994 (5th Cir. 1998). We view all evidence and any inferences therefrom in the light most favorable to the government. See United States v. Gonzalez, 163 F.3d 255, 260 (5th Cir. 1998). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir. 1995) (quoting United States v.

<u>Bell</u>, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), aff'd on other grounds, 462 U.S. 356, (1983)).  In addition, "[i]t is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate the credibility of witnesses."  <u>United States v. Ivey</u>, 949 F.2d 759, 767 (5th Cir. 1991).

For conspiracy to possess with intent to distribute, the government must prove: (1) existence of an agreement to possess with the intent to distribute; (2) knowledge of the agreement; and (3) voluntary participation in the agreement.  <u>See</u> <u>United States v. Gonzales</u>, 121 F.3d 928, 935 (5th Cir. 1997).  For aiding and abetting, the government must prove that the underlying offense occurred,[6] and  the defendant: "(1)  associated with a criminal venture, (2) participated in the venture, and (3) sought by action to make the venture successful."  <u>United States v. Lombardi</u>, 138 F.3d 559, 561 (5th Cir. 1998).  The defendant must "share in the intent to commit the offense" and "play an active role in its commission."  <u>Id.</u>

The evidence is sufficient to support Flores-Diaz's convictions.  When Robledo-Robledo told Navarro and the CI that the Fiesta would be the new location for the transaction, he also told them that his "compadre" would be along soon to drive them to the Fiesta.  After Robledo-Robledo left, Flores-Diaz arrived, and confirmed to the pair that he would take them to the Fiesta.  In

---

[6]Nobody contests that the government proved that the underlying offense of possession with intent to distribute occurred.

casual conversation, the CI mentioned being worn out from all the running he had been doing that day; Flores-Diaz responded "that is the way it is, this life, running and running.  We are also in the painting."  Flores-Diaz drove the CI and Navarro to the Fiesta, and all three went inside.  During the hour or so they waited at the Fiesta, Flores-Diaz repeatedly went in and out of the store.  Eventually, Navarro handed Flores-Diaz the CI's cell phone.  Flores-Diaz called the Longview house:  Robledo-Robledo had stopped at the residence before arriving at the Fiesta, and a later search of the house uncovered cocaine packaged in the same manner as the cocaine hidden in Robledo-Robledo's van.  Flores-Diaz spoke with someone, but the CI did not overhear the conversation.  Then, Flores-Diaz passed the phone to Navarro.  After Navarro hung up, Flores-Diaz asked "is he coming?"  Navarro responded "he is close by, to give a minute."  When Rodriguez arrived at the Fiesta, Flores-Diaz immediately identified him, and said, "here comes the man."  Rodriguez instructed Flores-Diaz to get the keys to the van when it arrived and to give them to the CI.

Viewing this evidence and the inferences therefrom in the light most favorable to the government, a rational juror could have found that the evidence established beyond a reasonable doubt all of the elements of conspiracy to possess with intent to distribute more than five kilograms of cocaine, and all of the elements of aiding and abetting.  Flores-Diaz contends that mere presence with no knowing participation in the conspiracy is not sufficient to convict.  Viewing the evidence and the inferences therefrom in the

light most favorable to the government, a rational juror could have found that the evidence established beyond a reasonable doubt that Flores-Diaz knowingly participated in the drug transaction. Therefore, we affirm.

**AFFIRMED.**